WHITMAN v. COCHRANE.

1. DRAINS—DRAIN SALE—PREFERRED BIDDER—STATUTES.
    The right to be a preferred bidder at a drain sale, given
    by 1 Comp. Laws 1915, § 4904, is a substantial one, of
    which all bidders are bound to take notice.

2. SAME—CONTRACT FOR CONSTRUCTION—PREFERRED BIDDER.
    Where plaintiff, a preferred bidder under the statute, noti-
    fied the drain commissioner, who was acting as auctioneer,
    after all the bids had been made and the contract was
    declared sold, but before announcement to whom it was
    sold, that he claimed the contract as a preferred bidder,
    at the lowest bid, he was entitled to the same.

Certiorari to Jackson; Williams, J. Submitted April
8, 1919. (Calendar No. 28,702.) Decided May 29,
1919.

Mandamus by Seward E. Whitman to compel Em-
mett E. Cochrane and Raymond H. Briggs, drain com-
missioners of Jackson and Calhoun counties, to award
a contract to plaintiff for the construction of a drain.
From an order denying the writ, plaintiff brings cer-
tiorari. Reversed, and writ granted.

*William M. Smith* and *Nathan E. Bailey,* for ap-
pellant.

*J. M. Hatch & Son* and *C. C. Cortright,* for ap-
pellees.

MOORE, J. This is a contest between the petitioner
and George A. Smith as to which of them shall be
awarded a contract to construct a drain. It involves
a construction of the provisions of section 4904 of the
Compiled Laws of 1915 which provides:

"The parties who are assessed a tax for benefits in
the construction of such drain, and who may be bid-

ders for the contracts thereon, shall, if equal bidders with other parties, be preferred in awarding such contracts."

Mr. Smith claims his bid was accepted and that he should have the contract. The bidding had been going on for some time and one George A. Smith had offered to do a certain job for $12,399. Emmett E. Cochrane, county drain commissioner of Jackson county, was receiving bids.

It is the claim of the petitioner that before the bid of Mr. Smith was accepted he indicated to Mr. Cochrane that he desired to take advantage of the statute and said: "I will take that as a preferred bidder."

A controversy arose which resulted in Mr. Whitman filing a petition in the Jackson circuit court, setting up the facts and asking for a writ of mandamus against the drain commissioners, commanding them to enter into the contract with him. The matter was put at issue, attorneys for George A. Smith, who were permitted to make a defense, asked for a jury which was impaneled. The testimony was all taken before the jury, the court later discharged the jury and denied the writ of mandamus. The case is sought to be reviewed here.

The circuit judge was in grave doubt as to what he ought to do as is indicated by the following taken from his opinion:

"Section 4904 of the Compiled Laws of 1915, provides among other things that the county drain commissioner shall thereupon proceed to receive bids and let contracts for the construction of the sections and make contracts with the lowest responsible bidder giving adequate security for the performance of the work. A little further on in the statute the following language is used:

" 'Parties who are assessed a tax for benefits in the construction of such drain, and who may be bidders for the contracts

thereon, shall, if equal bidders with other parties, be preferred in awarding such contracts.'

"Now, under the testimony in this case, I take it that there is no dispute that Mr. Whitman was assessed a tax for benefits under this drain, and therefore, if at the time which is in question in this particular sale he was an equal bidder with Mr. Smith, he should be preferred in awarding the contract, because there is, as I recall it, no claim that Mr. Smith was assessed any tax for benefits under the drain. That is correct isn't it Mr. Hatch?

"*Mr. Hatch:* Yes, sir.

"*The Court:* So that the question narrows down to this precise point as I view it, at the time that the sale drew toward a close there, was Mr. Whitman an equal bidder with Mr. Smith, at $12,399, for the construction work? That involves a construction of the language of the statute, 'equal bidder.' I think the word 'bidder' as used in ordinary language signifies one who makes an offer at a public sale. Now then, I think it is necessarily implied in the use of that language by the legislature that a man should make his offer according to the rules or custom of the particular kind of sale that was being carried on at that time.

"If in this case we followed the analogy of an auction sale, which counsel for relator think should not be followed, there would be very little difficulty with the proposition in my mind. The principle of the thing would be that the offer or bid would amount in law to an offer and the auctioneer signifying that the sale was closed, either by the fall of the hammer or by appropriate words and gestures, would amount to an acceptance of that offer, and unless a man who wanted to bid got in his bid at some time before the auctioneer had cried the price in the customary way, three times, and used the word 'sold,' or appropriate words to indicate that the transaction was closed, his bid would not be considered as made in the customary way and would be rejected by the auctioneer.

"I am inclined to think on the whole, although I have considerable difficulty with the question, that the analogy of an auction sale should be followed here. Here is a job of considerable magnitude which at-

tracts bidders from considerable distances, as apparently was the situation here. Men were at the sale from a considerable number of surrounding towns and at considerable distances. It is important for the public good that such men as are competent to do that kind of drain construction can go where they are to do any bidding on such jobs. I submit if contractors —if the law were that contractors could name a bid and be told that the contract was knocked down to them and then at some later time the sale could be reopened and the matter all threshed over again, that there would be difficulty in securing bidders. This is a practical phase of the question. * * *

"Now, I fully realize that I may be entirely wrong in this matter. The Supreme Court may take an entirely different view of the situation and I am frank to say I am not at all certain what the final decision will be. I trust, however, that the matter will be reviewed because this is a novel proposition and there is much to be said on both sides. I shall therefore, gentlemen, deny the writ."

There is not much conflict in the testimony as to what occurred. Mr. Cochrane testified in part as follows:

"Q. At the sale of that drain you acted as auctioneer?

"A. Yes, sir.

"Q. I wish you would tell us, Mr. Cochrane, in your own way—you know what this dispute is about—just what occurred there in reference to the bids on this drain between Mr. Smith and Mr. Whitman and yourself?

"A. It is quite a long story from the start of the sale to the finish.

"Q. We just—all we care about is what occurred at the end. We don't care about all the bids.

"A. Mr. Whitman was a consistent bidder on the drain until it got to $15,000, as I remember it, and then he dropped out. Mr. Smith was bidding continuously. Finally when the amount got down to $15,000 some other bidders came in, other men that was qualified to bid, and they bid the amount down to $12,399, as I remember it. I tried to have the bid lowered by

different ones, and finally I called three times and sold, and Mr. Whitman says, 'I prefer that bid.'

"*Q.* What did you say after that, after the word 'sold' what did you say?

"*A.* I said 'to this man here.' I didn't know Mr. Smith's name.

"*Q.* Did Mr. Whitman speak up before you said that, 'to this man here,' that he would take it as a preferred bidder?

"*A.* Yes. He says, 'I prefer that bid.' That is the words he used.

"*Q.* Did he say that before you said the words, 'to this man,' pointing to Mr. Smith?

"*A.* Yes, sir."

On the cross-examination he testified in part as follows:

"*Q.* Just tell what you did, Mr. Cochrane?

"*A.* I tried to get a bid as low as possible and when I found I couldn't get it lowered, I gave fair warning once, twice, three times and sold.

"*Q.* You did use the word 'sold' before Mr. Whitman spoke?

"*A.* Yes, sir.

"*Q.* You had accepted the bid of George A. Smith—

"*Mr. Smith* (interrupting): I object to that, if the court please, as calling for a conclusion, and improper, incompetent and irrelevant, and calling for a question of law, whether he had accepted the bid or not.

"*Mr. Cortright:* That was the last bid that was made, $12,399.

"*The Court:* What he said is all right, but his construction of what it amounted to is for the jury as well. You may show what Mr. Cochrane did and what he said and all about it in that way, but try to avoid making him draw conclusions as to the result of what he did. They object to the word 'accept' because that calls for a conclusion and I think that is a proper criticism.

"*Mr. Cortright:* I can't see it that way, but I am willing to frame the question another way.

"*Q.* Did George A. Smith offer—make a bid of $12,-399?

"*A.* Yes, sir.

"*Q.* Was there any other bid lower than that?
"*A.* Not that I heard.
"*Q.* It was George A. Smith's bid of $12,399 on which you struck or said the word 'sold'?
"*A.* Yes, sir."

Before Mr. Cochrane indicated to whom he had sold the contract, he was advised by Mr. Whitman that he was insisting upon his rights under the statute to have the contract awarded to him. This was a substantial right given by the statute and of which all the bidders were bound to take notice.

The writ will issue as prayed. Petitioner will recover his costs of both courts, to be taxed.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.